# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ATCHERLEY,<br><br>    Plaintiff,<br><br>    vs.<br><br>EDGAR CLARK, et al.,<br><br>    Defendants. | 1:12cv00225 DLB PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS<br><br>THIRTY-DAY DEADLINE |

Plaintiff William Atcherley ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983. Plaintiff filed his complaint on February 17, 2012. Plaintiff names the following Defendants: Edgar Clark, M.D., Glenn Thiel., M.D., CEO Macias, R.N. Holt, R.N. Ceballo, R.N. Anderson, R.N. Barbolla, L.V.N. Arbadia, L.V.N. Ross, Correctional Officer J. Rios, Correctional Officer J. Torres, Pacific Orthopedic and Clement Alade, M.D.

## A.   LEGAL STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

B.     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Kern Valley State Prison. The events complained of occurred while he was housed at Corcoran State Prison ("CSP")

On January 13, 2011, Defendant Alade performed arthroscopic surgery on Plaintiff's left knee at Pacific Orthopedic.[1] Defendant Alade ordered a wheelchair for Plaintiff for two weeks, and ordered that his dressing be kept clean and dry until his next appointment.

When Plaintiff arrived back at CSP, he was taken to the CSP emergency room and examined by Defendant Clark. Defendant Clark ordered a wheelchair for Plaintiff for two weeks. He also issued, and approved, a CDC 7410 chrono but failed to give Plaintiff a copy. A copy of the order and chrono were given to Defendant Barbolla, but Defendant Barbolla did not take any action on the order or chrono until after they had expired. Plaintiff was forced to walk everywhere, against doctor's orders, when he was returned to his housing unit.

On January 18, 2011, after Plaintiff was returned to his housing unit, he submitted a request to see the yard nurse or doctor. On January 20, 2011, Plaintiff saw Defendant Holt. Plaintiff alleges that Defendant Holt refused to follow up on the wheelchair/walker problem and used a pair of non-sterile gloves. Defendant Holt touched various items and then, without washing her hands, began removing Plaintiff's bandages. In the process, she accidentally pulled out one of the stiches and his wound began to bleed. Defendant Holt touched the torn stitch with her contaminated gloves, and without cleaning the wound, rewrapped the wound with the same dirty bandage. She secured the old bandage with a new bandage on the outside.

On January 21 and 22, 2011, Plaintiff asked the second and third watch L.V.N.s to change his dirty bandage.[2] They refused, stating that they had no doctor's orders to do so.

---

[1] Plaintiff alleges that Pacific Orthopedic and Dr. Adale were consultants and/or contractors with CSP and/or CDCR.
[2] Plaintiff states that he does not know the name of these L.V.N.s because they were not required to wear their name tags.

3

On January 23, 2011, Plaintiff awoke with yellow drainage running down his leg. He showed this to the second and third watch L.V.N.s, who told Plaintiff that it was normal. An L.V.N. gave Plaintiff clean bandage material to change his own bandage and told him to submit a form for medical services. Plaintiff contends that the L.V.N. refused to change the bandage and refused to send Plaintiff to the prison emergency room to be seen by the doctor on call.

Also on January 23, 2011, Plaintiff wrote letters to Defendants Pacific Orthopedic, Defendant Alade, Defendant Clark and Defendant Macias about the lack of assistive devices and his developing infection. Plaintiff contends these Defendants were aware of his improper medical care and ignored his letters

On January 24, 2011, the second and third watch L.V.N.s refused to change Plaintiff's bandages without a doctor's order, and refused to send Plaintiff to the prison hospital. These L.V.N.s also refused to give Plaintiff new bandage material.

On January 25 and 26, 2011, Plaintiff saw Defendant Ceballo. He did not have his wheelchair and walker. Defendant Ceballo changed Plaintiff's dirty bandage and said that the drainage was normal. Defendant Ceballo also said that she would check on the wheelchair.

On January 26, 2011, Defendants Rios and Torres escorted Plaintiff back to his housing unit after medical appointments. Plaintiff fell down, hurt both knees and dirtied the just-changed bandage. Defendants Rios and Torres refused to take Plaintiff back to the clinic because they were too busy.

Plaintiff then asked the second and third watch L.V.N.s to change his bandage, and they refused. They told Plaintiff that it had already been changed and it was not their job to change it. The L.V.N.s would not give Plaintiff bandage material.

On the evening of January 26, 2011, Plaintiff submitted a new request for medical treatment. On January 27, 2011, Defendant Barbolla came to Plaintiff's cell to examine

4

Plaintiff's cell mate. Plaintiff asked her about the wheelchair and she said that he didn't need one. Defendant Barbolla told Plaintiff that if he did need one, he could use the one in the unit.

On January 28, 2011, Plaintiff was again escorted to the clinic without a wheelchair or walker because the unit wheelchair could not be located. Plaintiff saw Defendant Anderson, who changed Plaintiff's bandage and told him that the drainage was not normal. She did not, however, order the L.V.N.s to change his bandages when needed and did not send him to see a doctor.

From January 28, 2011, through February 1, 2011, Plaintiff requested assistance from every L.V.N. who came to his cell door and each refused to help change Plaintiff's bandage without a doctor's order. On January 30, 2011, Plaintiff's leg was swollen from the knee down and the assigned L.V.N. listened to his complaints but left the building without providing assistance.

On January 31, 2011, Plaintiff saw Dr. Galt in the clinic. Dr. Galt removed the two remaining stitches, ordered the wheelchair extended, ordered that the bandage be changed daily and ordered antibiotics. The third watch L.V.N. then refused to change his bandage, stating that the nurse should do it so she could see how his leg was doing.

On February 2, 2011, Plaintiff was examined against by Defendant Holt. Defendant Holt had a doctor look at Plaintiff's knee and he was taken to the prison hospital emergency room. Plaintiff was seen by Dr. Moon, who wanted to admit Plaintiff for IV treatment, but Plaintiff refused.

On February 4, 2011, Plaintiff returned to the hospital and when Dr. Moon saw Plaintiff's knee, he was taken to San Joaquin Hospital and admitted. After testing, Plaintiff was diagnosed with MSSA, septic/emesis arthritis and mild anemia.

On February 11, 2011, Dr. Alade performed a second surgery to clean out the infection caused by "poor wound care." Instead of three small holes in his knee, Plaintiff now had a ten inch scar down the middle of his knee.

On February 19 and 20, 2011, Defendant Ross refused to change Plaintiff's bandage following the second surgery. The daily bandage change was ordered by Dr. Kim on February 17, 2011, when he was released from the prison hospital. Plaintiff alleges that an unknown L.V.N. also refused to change his bandages after the second surgery.

From February 24, 2011, to August 5, 2011, Plaintiff underwent painful physical therapy as he awaited a recommended third procedure on his left knee. Defendant Thiel denied the procedure on an unknown date.

Plaintiff further alleges that Defendants Thiel and Macias were in charge of supervising medical staff, training medical staff, and creating policy.

Based on these allegations, Plaintiff alleges (1) violation of the Eighth Amendment based on failure to protect by Defendants Pacific Orthopedic, Alade, Clark, Thiel, Macias, Holt, Ceballa, Anderson, Barbolla, Rios, Torres, Ross and Doe Defendants; (2) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Pacific Orthopedic, Alade, Clark, Thiel, Macias, Barbolla, Holt, Ceballa, Anderson, Rios, Torres, Arbadia, Ross and Doe Defendants; (3) cruel and unusual punishment in violation of the Eighth Amendment against Defendants Pacific Orthopedic, Alade, Clark, Macias, Thiel, Holt, Ceballa, Anderson, Barbolla, Rios, Torres, Ross, Arbadia and Doe Defendants;  and (4) negligence against Defendants Pacific Orthopedic, Alade, Clark, Thiel, Macias, Holt, Ceballa, Anderson, Barbolla, Arbadia, Ross, Rios, Torres and Doe Defendants.

C.      **ANALYSIS**

   1.      *Failure to Protect*

Plaintiff's failure to protect claim is duplicative of his Eighth Amendment medical claim, and the Court will therefore analyze his allegations in this context.

   2.      *Eighth Amendment- Medical Care*

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

a.	Defendants Clark, Thiel and Macias- Supervisory Liability

Plaintiff first alleges that Defendants Clark, Thiel and Macias instituted a policy of "restricting if not outright denying follow-up care/treatment recommended by outside medical consultants/contractors when such care is expensive." Compl. 16.

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

While it is possible, then, to base liability on a policy, Plaintiff has failed to do so here. His statement that Defendants Clark, Thiel and Macias instituted a policy to deny medical treatment is unsupported, especially since the only facts he presents to the Court are ones dealing with his own medical treatment. Plaintiff's conclusory allegations fail to state a claim against Defendants Clark, Thiel and Macias based on an alleged policy.

Moreover, other than stating that Defendant Macias implemented a policy, he includes no other factual allegations linking Defendant Macias to any constitutional violation. He has therefore failed to state any claims against Defendant Macias. This applies to all claims against Defendant Macias and he will not be discussed further in this order

        b.      Defendant Arabadia

Plaintiff alleges no facts related to Defendant Arabadia and he has therefore failed to state any claim against her. This applies to all allegations against Defendant Arabadia and she will not be discussed further in this order.

        c.      Defendants Pacific Orthopedic, Alade, Clark and Thiel

Plaintiff next contends that Defendants Pacific Orthopedic, Alade, Clark and Thiel violated the Eighth Amendment by failing to take steps to ensure that Plaintiff received necessary medical treatment. He bases this on his presumption that these Defendants were aware of the lack of care because he sent them a letter.

Even assuming for screening purposes that Pacific Orthopedic is a "person" for purposes of section 1983, Plaintiff fails to sufficiently allege that either Pacific Orthopedic or Defendant Alade knew of an excessive risk to Plaintiff's health or safety. Plaintiff alleges that he wrote them a letter to inform them of the issues, but simply sending a letter does not support a presumption of knowledge. Pursuant to Iqbal, Plaintiff must affirmatively allege that Defendants received the letter and knew of its contents. He therefore fails to state a claim against Pacific Orthopedic or Defendant Alade.

Plaintiff's allegations against Defendants Clark and Thiel fail for the same reasons. Plaintiff's letter to Defendants Clark and Thiel is not sufficient to presume that they were aware of Plaintiff's complaints and knowingly denied or delayed medical care.

Insofar as Plaintiff alleges that Defendant Thiel violated the Eighth Amendment by failing to approve a medical procedure, his claims are too vague to state a claim. Plaintiff provides no facts or allegations to indicate that Defendant Thiel acted with deliberate indifference.

        d.      Allegations Relating to Wheelchair Orders

Plaintiff alleges that Defendants Clark, Barbolla, Holt, Ceballa, Anderson, Rios and Torres refused to provide Plaintiff with his own wheelchair. He also contends that Defendants Rios and Torres refused to use discretion in escorting Plaintiff, who obviously lacked mobility, around the institution without a wheelchair or walker.

According to Plaintiff, Defendants Clark ordered a wheelchair, but instead of giving the order to Plaintiff, he gave it to Defendant Barbolla, who did not take appropriate action. As a result, Plaintiff was not given a wheelchair and was forced to walk everywhere. He asked Defendant Holt to follow-up on the wheelchair order, but Holt refused to do so. Plaintiff also asked Defendant Ceballo, who told Plaintiff that she would follow-up. Defendant Barbolla eventually told Plaintiff that he did not need a wheelchair and that if he did, he could use the unit wheelchair. There are no factual allegations made against Defendant Anderson relating to the wheelchair issue.

Based on a liberal reading of Plaintiff's complaint, the Court finds that he states a claim for deliberate indifference to a serious medical need against Defendants Holt and Barbolla in light of Dr. Clark's order for a wheelchair.

There are no factual allegations that Dr. Clark or Defendant Ceballo acted with the requisite knowledge, and he therefore fails to state a claim against them for deliberate indifference. Similarly, there are no allegations connecting Defendant Anderson to the wheelchair issue and Plaintiff therefore fails to state a claim against Defendant Anderson on this basis.

As to Defendants Rios and Torres, who escorted Plaintiff back to his housing unit without his walker or wheelchair, Plaintiff fails to allege that they even knew that Plaintiff needed and/or wanted a wheelchair. His allegations therefore do not demonstrate that

10

Defendants Rios or Torres acted with the requisite knowledge and he fails to state an Eighth Amendment medical claim against them.[3]

####### e. Allegations Relating to Bandage Changing

Plaintiff contends that Defendants Clark, Holt, Ceballo, Anderson, Ross and Doe Defendants refused and/or failed to change his bandages, even though they knew the bandages needed to be changed.

Plaintiff states that he does not know what orders Dr. Clark made regarding bandage changing, though he also alleges that Dr. Clark failed to "specifically order bandage changing." Compl. 8. Defendant Holt re-used a dirty bandage to re-wrap his wound. Numerous Doe L.V.N.s refused to change Plaintiff's bandages despite his requests to do so. Defendant Ceballo changed his bandage, but then failed to order the L.V.N.s to change the bandages daily, or as needed. Similarly, Defendant Anderson changed Plaintiff's bandages, but failed to order the L.V.N.s to change the bandages as needed. Defendant Ross refused to change Plaintiff's bandages after the second surgery, despite an order from Dr. Kim to do so.

Plaintiff has stated a claim for deliberate indifference to a serious medical need against Defendant Ross in light of Dr. Kim's order. He also states a claim against the Doe L.V.N.s who repeatedly refused to change his bandages.

However, as to Defendant Clark, Ceballo, Holt and Anderson, Plaintiff has not alleged that their actions were taken in conscious disregarded of an excessive risk to his health. While Defendants Clark, Anderson and Ceballo may have failed to order his bandages changed, there is no indication that they did so in conscious disregard of his health. Similarly, while Defendant Holt may have been negligent in caring for Plaintiff's wound, there is no indication that he did so in conscious disregard of Plaintiff's health. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97,

---

[3] Plaintiff also contends that Doe officers escorted him without his wheelchair, but he includes no factual allegations against them and therefore fails to state a claim.

11

106, 97 S.Ct. 285 (1977); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

            f.        Failure to Send Plaintiff to the Prison Hospital

Plaintiff alleges that Defendants Clark, Holt, Ceballo and Doe L.V.N.s refused and failed to order that Plaintiff be taken to the prison hospital after being informed either in person, or by letter, that he had increased pain and drainage from his wound.

Construed liberally, the Court finds that Plaintiff states a claim against the Doe L.V.N.s based on their delay and/or denial of further medical treatment.

However, as explained above, a letter written to Dr. Clark is not sufficient to support a presumption of knowledge. Regarding Defendant Holt, Plaintiff makes no allegations that Defendant Holt refused to send him to the prison hospital. Plaintiff therefore fails to state a claim against either Defendant Clark or Holt.

Defendant also fails to state a claim against Defendant Ceballo. According to his allegations, Defendant Ceballo provided care but did not send him to the prison hospital. There is no indication that she did not send Plaintiff to the prison hospital in conscious disregard of Plaintiff's health. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [section] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted); accord Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012).

        3.        *Eighth Amendment- Conditions of Confinement*

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive

and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety. Farmer, 511 U.S. at 834. Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson, 503 U.S.at 9.

        a.      Defendants Pacific Orthopedic, Alade and Clark

Plaintiff alleges that Defendants Pacific Orthopedic, Alade and Clark failed to follow-up on Plaintiff's treatment after Plaintiff wrote them a letter, and that this led to inhumane conditions of confinement.

Plaintiff's claim against these Defendants fails, again, because sending a letter cannot support a presumption of knowledge.

   b. Allegations Relating to Wheelchair Order

Plaintiff alleges that Defendants Clark, Thiel, Barbolla, Holt, Ceballa, Anderson, Rios, Torres and Does failed to authorize a wheelchair for movement around the prison and/or failed to ensure that Plaintiff had the required paperwork for the wheelchair. He contends that this amounted to cruel and unusual punishment because he was forced to move around the institution without an assistive device, which caused him to sweat more and contributed to the development of a serious and painful staph infection.

Based on a liberal reading of the complaint, Plaintiff states an Eighth Amendment conditions of confinement claim against Defendants Holt and Barbolla in light of the wheelchair order and subsequent fall, followed by a second surgery.

As to Defendants Clark, Ceballo, Rios and Torres, there are no factual allegations that they acted with the requisite knowledge, and he therefore fails to state a claim against them. Similarly, there are no allegations connecting Defendant Anderson, Thiel or Doe Defendants to the wheelchair issue and Plaintiff therefore fails to state a claim against them on this basis.

   c. Allegations Relating to Bandage Changing

Plaintiff contends that Defendants Alade, Clark, Holt, Ceballa, Anderson, Ross and Doe Defendants refused and/or failed to change his bandages. He contends that this led to the development of a serious and painful staph infection and second surgery.

Plaintiff has stated a claim for inhumane conditions of confinement against Defendant Ross in light of Dr. Kim's order. He also states a claim against the Doe L.V.N.s who repeatedly refused to change his bandages.

As to Dr. Alade, the Court notes that Plaintiff alleges that he ordered that the bandages be kept "clean and dry until appointment." Compl. 7. This seems to be contrary to Plaintiff's allegation and here therefore fails to state a claim against Dr. Alade.

As to Defendants Clark, Ceballo, Holt, Anderson and Ross, Plaintiff has not alleged that they acted with deliberate indifference. He therefore fails to state a claim against them.

4.     *Negligence*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.1997).

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

a.     Allegations Relating to Wheelchair Order

Plaintiff alleges that Defendants Pacific Orthopedic, Alade, Clark, Thiel, Holt, Ceballo, Anderson, Rios, Torres and Doe Defendants were negligent in failing to provide a walker and/or wheelchair, and/or failing to ensure that Plaintiff had the proper documentation for the use of a walker or wheelchair.

Construed liberally, Plaintiff states a negligence claim against Defendants Holt and Barbolla based on their duty arising from their positions as treating sources in the prison where the wheelchair would have been provided.

15

As to the remaining Defendants, however, there doesn't appear to be, and Plaintiff does not allege, a duty to ensure that Plaintiff received his wheelchair.  He therefore fails to state a claim against the remaining Defendants on this basis.

### b.        Allegations Relating to Bandage Changing

Plaintiff alleges that Defendants Pacific Orthopedic, Alade, Clark, Holt, Ceballo, Ross, Anderson and Doe Defendants were negligent in failing to order daily bandage changes and/or refusing to change bandages.

Construed liberally, the Court finds that Plaintiff has stated a negligence claim against Defendants Clark, Anderson and Ceballo based on their failure to order daily bandage changes in light of their position as treating sources with control over such orders.  The Court also finds that Plaintiff states a negligence claim against Defendant Ross and Doe L.V.N.s based on their refusal, as Plaintiff's treating sources in the prison, to change his bandages.  Finally, Plaintiff states a negligence claim against Defendant Holt for what Plaintiff alleges to be improper wound care.

As explained above, Dr. Alade did order bandage changes and Plaintiff therefore fails to state a claim against him and/or Pacific Orthopedic for negligence.

### c.        Failure to Send Plaintiff to Prison Hospital

Plaintiff alleges that Defendants Holt, Ceballo, Anderson and Doe Defendants were negligent in failing to send him to the prison hospital to be seen for his infection.

Construed liberally, the Court finds that Plaintiff states a claim against Defendants Ceballo, Anderson and Doe L.V.N.s based on their failure to send Plaintiff to the prison hospital.

Regarding Defendant Holt, Plaintiff makes no allegations that Defendant Holt refused to send him to the prison hospital and he therefore fails to state a claim against Holt on this basis.

        d.      Dr. Thiel

Finally, Plaintiff alleges that Dr. Thiel was negligent in failing to approve a procedure for Plaintiff's knee. His allegations are too vague, however, to allow the Court to properly analyze whether this states a claim for negligence. Accordingly, as currently pled, Plaintiff fails to state a negligence claim against Dr. Thiel.

**D.**    **CONCLUSION AND ORDER**

<u>Plaintiff's complaint states the following cognizable claims</u>: (1) violation of the Eighth Amendment against Defendants Holt, Barbolla, Ross and Doe L.V.N.s for deliberate indifference to a serious medical need; (2) violation of the Eighth Amendment against Defendants Holt, Barbolla, Ross and Doe L.V.N.s based on conditions of confinement; and (3) negligence against Defendants Holt, Barbolla, Clark, Anderson, Ceballo, Ross and Doe L.V.N.s.

Plaintiff may either (1) proceed on his cognizable claims, identified above, or (2) file an amended complaint curing the deficiencies identified in this order. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff is notified that his amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff is willing to proceed on his cognizable claims, he may notify the Court in writing. The Court will then dismiss Plaintiff's other claims and Defendants, and provide Plaintiff with further instructions regarding service of a summons and the complaint.[4]

---

[4] Plaintiff is reminded that the United States Marshal cannot initiate service of process on unknown defendants. Therefore, the Court will send Plaintiff the appropriate service documents at such time as Plaintiff ascertains the identities of the Doe defendants.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claims identified above.

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: __**February 15, 2013**__                    /s/ *Dennis L. Beck*
                                                       UNITED STATES MAGISTRATE JUDGE