# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ATCHERLEY, <br><br> Plaintiff, <br><br> vs. <br><br> EDGAR CLARK, et al., <br><br> Defendants. | 1:12cv00225 DLB PC <br><br> ORDER FINDING CERTAIN CLAIMS COGNIZABLE AND DISMISSING CERTAIN CLAIMS AND DEFENDANTS |

    Plaintiff William Atcherley ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983. Plaintiff filed his complaint on February 17, 2012. On February 19, 2013, the Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claims.

    On March 14, 2013, Plaintiff filed his First Amended Complaint ("FAC"). Plaintiff names the following Defendants: Edgar Clark, M.D., Glenn Thiel., M.D., R.N. Holt, R.N. Ceballo, R.N. Anderson, R.N. Barbolla, L.V.N. Arbadia, L.V.N. T. Ross, Correctional Officer J. Rios, Correctional Officer J. Torres, Clement Alade, M.D. and Does 1-15.[1]

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on April 18, 2013.

A.  **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235

(9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Kern Valley State Prison. The events complained of occurred while he was housed at Corcoran State Prison ("CSP").

Plaintiff alleges that in 2010, an MRI of his left knee showed a meniscal tear. The prison doctor referred Plaintiff to an orthopedic specialist/surgeon for treatment.

On July 30, 2010, Defendant Alade[2] examined Plaintiff and recommended surgery. On September 30, 2010, the prison primary care physician concurred with the recommendation and Plaintiff was again referred to Defendant Alade for surgery.

On January 18, 2011, Defendant Alade performed arthroscopic surgery on Plaintiff's left knee. Defendant Alade ordered that Plaintiff use a wheelchair for two weeks and that his dressing be kept clean and dry until his next appointment. Plaintiff was not informed of these orders and did not receive a copy of the orders until weeks after surgery.

Plaintiff explains that Defendant Alade examined him just prior to the surgery, and Plaintiff informed him of a previous infection. Defendant Alade said that he would order some antibiotics for Plaintiff to take after surgery. However, Defendant Alade forgot to order the antibiotics despite his knowledge of Plaintiff's previous infections.

When Plaintiff arrived back at CSP, he was taken to the CSP emergency room and examined by Defendant Clark. Defendant Clark ordered a wheelchair for Plaintiff for two weeks. He also wrote and approved a CDC 7410 chrono for the use of the wheelchair. However, Defendant Clark failed to give Plaintiff a copy of the chrono, in violation of the

---

[2] Plaintiff alleges that Dr. Alade is a doctor with Pacific Orthopedic and was under contract with CDCR.

3

regulations. A copy of the wheelchair order and chrono were faxed to Defendant Barbolla, but Defendant Barbolla did not take any action on the order or chrono until after they had expired. Plaintiff alleges that Defendant Barbolla was authorized and obligated to provide a wheelchair. The order was also faxed to the 4A Clinic. Since Plaintiff was not given a copy, he was not allowed to use a wheelchair and was forced to walk everywhere, against doctor's orders.

During Plaintiff's January 18, 2011, interview with Defendant Clark, Plaintiff told him of his previous infection. Defendant Clark failed to order antibiotics and failed to order daily, or as needed, bandage changes. Plaintiff alleges that Defendant Clark had authority to issue Plaintiff a wheelchair. Upon information and belief, Plaintiff alleges that Defendant Clark had a duty to ensure that he had a wheelchair, antibiotics and an order for bandage changes.

On January 18, 2011, after Plaintiff's examination by Dr. Clark, Plaintiff was returned to yard 4A. A copy of the wheelchair order and Defendant Alade's bandage change order were faxed to the 4A Clinic. The orders are supposed to be reviewed by all RNs and LVNs on the 4A yard medical staff, including Defendants Holt, Ceballo, Anderson, Arabadia, Ross and Doe Defendants. Defendants Holt, Ceballo and Anderson were the treating sources in the prison (other than the prison hospital) where wheelchairs could have been provided. Each of these Defendants, in addition to the Doe Defendants, had the authority to either change Plaintiff's dirty bandages and/or to order a bandage change.

On January 18, 2011, after he returned to yard 4A, Plaintiff submitted a request to see the yard nurse or doctor. On January 20, 2011, Plaintiff was called and escorted to the 4A clinic by Defendant Holt. Plaintiff alleges that Defendant Holt violated the standard of care by (1) refusing to follow up on the wheelchair/walker problem, which she was obligated to do; and (2) using a pair of non-sterile gloves. Defendant Holt put on the gloves, opened up Plaintiff's paper chart, flipped through it, opened the desk drawer, answered the phone and took notes. She then took Plaintiff's vitals and without washing her hands or changing her gloves, she began to

remove Plaintiff's bandages to examine the wound. She accidentally pulled out a stitch and when Plaintiff pointed it out, Defendant Holt "touched the stitch in disbelief with her gloved finger and contaminated glove." FAC 9. Without cleaning the wound, Defendant Holt put the old bandage back on and secured it with a new bandage. Plaintiff was taken back to his housing unit.

On January 21 and 22, 2011, Plaintiff asked two Doe LVNs to change his dirty bandage. They refused, stating that they had no doctor's orders to do so.

On January 23, 2011, Plaintiff awoke with yellow drainage running down his leg from the area where the stitch was torn out. He showed this to the two Doe LVNs, who told Plaintiff that it was normal. Plaintiff attempted to explain that he had had this type of surgery before and that it was not normal. Plaintiff requested that his bandage be changed and that he be taken to the prison hospital. Both LVNs refused to send him to the hospital and refused to change his bandages. However, one of them gave Plaintiff clean bandage material to change his own bandage. Although these two Doe LVNs said that they did not have a doctor's order to change bandages, the medical records show that the order was faxed to the 4A medical clinic.

On January 24, 2011, the Doe LVNs again refused to change Plaintiff's bandages without a doctor's order, and refused to send Plaintiff to the prison hospital. The bandage was dirty, wet and smelled, and had not been changed since the 20th. These LVNs also refused to give Plaintiff new bandage material.

On January 25, 2011, Plaintiff was escorted to the 4A clinic in response to his January 23, 2011, health care request, by two Doe correctional officers, without his walker or his wheelchair. Prior to the escort, Plaintiff informed both officers that he was mobility impaired, had just had surgery, needed a wheelchair and he had a doctor's order for a wheelchair. Unable to produce a copy of the chrono, Plaintiff was informed that he could walk to the clinic, or he would be considered to be refusing his appointment. Plaintiff was forced to walk.

When he got to the clinic, he saw Defendant Ceballo, who changed Plaintiff's dirty bandage and said that the drainage was normal. Defendant Ceballo also said that she would check on the wheelchair. Plaintiff told Defendant Ceballo that the wound hurt more than it should and that the drainage was not normal. He requested that he be sent to the prison hospital and receive more bandages. Defendant Ceballo did not order more bandages despite the drainage and refused to send Plaintiff to the prison hospital even though she had authority to do so. Defendant Ceballo was also authorized to issue Plaintiff a wheelchair, but she refused to do so without an order.

On January 26, 2011, Defendants Rios and Torres escorted Plaintiff to the 4A clinic to see the dentist. He told both officers that he needed a wheelchair, but they told Plaintiff that they didn't bring one with him and did not know of any orders. Plaintiff was again told that he would walk or refuse the appointment. After the appointment, Defendants Rios and Torres escorted Plaintiff back to his unit. During the escort, Plaintiff fell down and hurt both knees on a dirt path. The wet bandage got dirty and Plaintiff requested that he be taken back to the clinic to see Defendant Ceballo for a bandage change. Defendants Rios and Torres refused because they were too busy. Plaintiff alleges that Defendants Rios and Torres acted with deliberate indifference when they unnecessarily denied him the use of a wheelchair when it was clear that he had an injury and lacked safe mobility. Plaintiff contends that staff, especially custody, can get a wheelchair at any time to transport inmates with medical issues.

After this incident, Plaintiff asked the second and third watch LVNs to change his bandage, and they refused. One told Plaintiff that it was not her job to change it and the other told him that the bandage had already been changed. They also refused to send Plaintiff to the prison hospital and would not give Plaintiff bandage material to change his own bandage.

On January 27, 2011, Defendant Barbolla came to Plaintiff's cell to examine Plaintiff's cell mate. Plaintiff asked her about the wheelchair and she said that he didn't need one. Defendant Barbolla told Plaintiff that if he did need one, he could use the one in the unit.

On the evening of January 27, 2011, Plaintiff asked the third watch nurse to send him to the prison hospital because he had started vomiting and having chills. The Doe LVN said that she couldn't send him to the hospital but could get him an appointment with an RN.

On January 28, 2011, Plaintiff was again escorted to the clinic without a wheelchair or walker because the unit wheelchair could not be located. Plaintiff saw Defendant Anderson, who changed Plaintiff's bandage and told him that the drainage was not normal. Plaintiff told Defendant Anderson that he was supposed to have a wheelchair and that he received the chrono the night before, but the unit wheelchair could not be located. Plaintiff asked Defendant Anderson to issue him a wheelchair and to send him to the prison hospital doctor. She refused to do either and told Plaintiff that he would be seeing a doctor in three days.

Although Defendant Anderson changed Plaintiff's bandages, she did not order more frequent changes. She also failed to send Plaintiff to the prison doctor for his infection in spite of the LVN's January 27, 2011, referral and Dr. Alade's orders to keep the dressing dry.

Plaintiff alleges that when he saw Defendants Holt, Ceballo and Anderson, they had his chart and therefore had the orders for the bandages and wheelchair.

From January 28, 2011, through February 1, 2011, Plaintiff requested assistance from every Doe LVN who came to his cell door on second and third watch. Each refused to help Plaintiff, change his bandage, send him to the prison hospital or give him his own bandage material. Plaintiff had no other way to obtain bandage material.

Defendant Arabadia was the RN on duty the most between January 18, 2011, and February 1, 2011. During the times that she worked, Plaintiff often asked her for bandage changes or to be sent to the prison hospital. She refused to get Plaintiff out of his cell to change

his bandage. Of all the Doe LVNs, Defendant Arabadia was the only one who gave Plaintiff his own bandage material.

On January 31, 2011, Plaintiff saw Dr. Galt in the clinic. Dr. Galt removed the two remaining stitches, ordered the wheelchair extended, ordered that the bandage be changed daily and ordered antibiotics.

Also on January 31, 2011, the third watch Doe LVN refused to change his bandage, despite Dr. Galt's order, stating that the nurse should do it so she could keep track of the infection. Plaintiff alleges that this was a violation of the doctor's orders.

On February 2, 2011, Plaintiff was examined by Defendant Holt. Defendant Holt had a doctor look at Plaintiff's knee, and the doctor ordered that Plaintiff be taken to the prison hospital emergency room. This was the first time he had seen a doctor since the surgery. At the prison hospital, Plaintiff was seen by Dr. Moon, who wanted to admit Plaintiff to the prison hospital for IV treatment. Plaintiff refused the treatment, so Dr. Moon ordered Plaintiff to be returned to the hospital in two days.

On February 4, 2011, Plaintiff returned to the hospital and when Dr. Moon saw Plaintiff's knee, he was taken to Mercy Hospital and admitted. Over the next week, Plaintiff was treated with antibiotics and underwent other testing. He was diagnosed with MSSA, septic/emesis arthritis and mild anemia.

On February 11, 2011, Defendant Alade performed a second surgery to clean out the infection caused by "poor wound care." Instead of three small holes in his knee, Plaintiff now had a ten inch scar down the middle of his knee.

On February 19 and 20, 2011, Defendant Ross refused to change Plaintiff's bandage following the second surgery. The daily bandage change was ordered by Dr. Kim on February 17, 2011, when he was released from the prison hospital.

From February 24, 2011, to August 5, 2011, Plaintiff underwent painful physical therapy at CSP three times a week. Plaintiff was in a wheelchair until September 2011 and he used a walker until April 13, 2012, as he recovered from the surgeries and staph infection. Plaintiff alleges that the infection was caused by poor wound care and grossly inadequate medical treatment by Defendants.

On March 30, 2011, Defendant Alade recommended a knee manipulation. Plaintiff's primary care physician at the prison, Dr. Ulit, agreed with the recommendation and submitted the required paperwork for the procedure. Without performing an examination or talking to Plaintiff, Defendant Thiel denied the procedure because it was too expensive.

Upon information and belief, Plaintiff alleges that Defendants Thiel and Clark have a policy of restricting, or denying, follow-up care/treatment recommended by outside medical contractors/consultants when such care is expensive and based on budget constraints. As a result of this denial, Plaintiff now walks with a limp and his knee often hurts even when he's not using it.

Based on these facts, Plaintiff alleges (1) deliberate indifference to a serious medical need in violation of the Eighth Amendment against all Defendants; (2) inhumane conditions of confinement in violation of the Eighth Amendment against all Defendants except Defendant Clark; (3) negligence against all Defendants; and (4) violation of the Americans with Disabilities Act and the Rehabilitation Act against Defendants Holt, Ceballo, Barbolla, Anderson, Rios, Torres and the two Doe correctional officers.

**C.   ANALYSIS**

   1.   Eighth Amendment- Medical Care

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation

marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

        a.    *Allegations Relating to Wheelchair Orders*

Plaintiff alleges that Defendants Holt, Barbolla, Ceballo, Anderson, Rios, Torres and two Doe correctional officers failed to authorize, issue or obtain a wheelchair for him despite their knowledge of a substantial risk to Plaintiff. As a result of their refusal, Plaintiff fell in the dirt and further injured his knee.

In the first screening order, the Court found that Plaintiff stated a claim against Defendants Holt and Barbolla based on their failure to provide a wheelchair, and his FAC continues to state a claim against them.

As to Defendants Ceballo and Anderson, Plaintiff has alleged additional facts. He contends that they had Plaintiff's chart, which included the wheelchair order. Defendant Ceballo

told Plaintiff that she would check on the wheelchair, but refused to issue one without an order. Defendant Anderson also refused to issue the wheelchair without an order, despite the presence of the order in his chart. Plaintiff has corrected the deficiencies and states a claim against Defendants Ceballo and Anderson.

As to Defendants Rios, Torres and two Doe correctional officers, Plaintiff alleges that prior to their escorts, he informed them that he was mobility impaired after having surgery and had an order for a wheelchair. Despite this, they told Plaintiff that he had to walk or refuse his appointment. Plaintiff alleges that due to walking without a wheelchair, he fell into the dirt, endured serious pain and developed a serious staph infection that required a second surgery. Plaintiff has corrected the deficiencies and states a claim against Defendants Rios, Torres and two Doe correctional officers.[3]

### b. *Allegations Relating to Bandage Changing*

Plaintiff contends that Defendants Arabadia, Ross, Holt, Ceballo, Anderson and Doe LVNs refused and/or failed to change his bandages, even though they knew the bandages needed to be changed. He also alleges that Defendants Holt, Ceballo, Anderson and Clark failed to order daily bandage changes in light of Dr. Alade's orders.

In the prior screening order, the Court found that Plaintiff stated a claim against Defendant Ross and the Doe LVNs based on their refusal to change Plaintiff's bandages. Plaintiff also now states a claim against Defendant Arabadia based on repeated refusals to change Plaintiff's bandages.

As to Defendants Ceballo, Anderson and Clark, Plaintiff has alleged that they refused to order more frequent bandage changes despite his requests. Viewed liberally, the Court finds that

---

[3] Plaintiff will be instructed on service by separate order. Plaintiff is also advised that the United States Marshal cannot initiate service of process on unknown Defendants. Therefore, the Court will send plaintiff the appropriate service documents at such time that Plaintiff ascertains that identities of the Doe Defendants.

Plaintiff states a claim against Defendants Ceballo, Anderson and Clark based on their refusal to order more frequent bandage changes.

As to Defendant Holt, however, Plaintiff makes no allegations that she either personally refused to change his bandages, or refused his request to order more frequent bandage changes. The Court explained in the prior screening order that this was insufficient to show that she acted, or failed to act, in conscious disregarded of an excessive risk to his health. He has failed to correct this deficiency and he therefore fails to state a claim against Defendant Holt based on her failure to order bandage changes.

        c.    *Failure to Send Plaintiff to the Prison Hospital*

Plaintiff alleges that Defendants Holt, Ceballo, Anderson, Arabadia and Doe LVNs refused and failed to order that Plaintiff be taken to the prison hospital after being informed in person that he had increased pain and drainage from his wound.

In the prior screening order, the Court found that Plaintiff stated a claim against the Doe LVNs based on their delay and/or denial of further medical treatment. Plaintiff also alleges that Defendants Ceballo, Anderson and Arabadia refused to send him for further treatment despite his requests and complaints. Plaintiff therefore states a claim against Defendants Doe LVNs, Ceballo, Anderson and Arabadia based on their refusal to send Plaintiff for further treatment.

Plaintiff has failed to correct the deficiency regarding Defendant Holt, however. The Court explained that he did not make any allegations that Defendant Holt refused to send him to the prison hospital. He has not cured this deficiency and he therefore fails to state a claim against Defendant Holt based on her failure to provide further treatment.

        d.    *Defendant Alade*

Plaintiff alleges that Defendant Alade was deliberately indifferent to his serious medical need when he failed to prescribe antibiotics despite knowledge of Plaintiff's prior infection, and when he failed to "inform plaintiff of the treatment plan (bandage changes)." FAC 17.

Plaintiff contends that although Defendant Alade told him that he would order antibiotics, he "forgot" to do so. FAC 17. That Defendant Alade *forgot* negates a finding that he acted with the requisite intent.

Similarly, although Plaintiff states that Defendant Alade did not inform him of the wheelchair and bandage orders, there is no indication that he did so in conscious disregard to a serious risk of harm to Plaintiff. Plaintiff therefore fails to state a claim against Defendant Alade.

    e. *Defendant Thiel*

Plaintiff contends that Defendant Thiel was deliberately indifferent when he failed to authorize the procedure recommended by Dr. Ulit, without examining or talking to Plaintiff. Plaintiff suggests that the decision was due to budgetary reasons.

Defendant Thiel was the Chief Medical Officer at CSP during the relevant time period and was allegedly responsible for reviewing and approving recommended procedures. However, although Plaintiff did not agree with his ultimate decision, there is no indication that he acted with deliberate indifference. Although Defendant Thiel did not examine or talk to Plaintiff, his failure to do so does not transform his review into an Eighth Amendment claim.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [section] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted); accord Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted); accord Snow, 681 F.3d at 987-88.

Plaintiff has failed to meet this standard and therefore fails to state a claim against Defendant Thiel.

### 2.    Eighth Amendment- Conditions of Confinement

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety. Farmer, 511 U.S. at 834. Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson, 503 U.S.at 9.

Plaintiff's conditions of confinement claims are made against the exact Defendants, and based on the same facts, as his deliberate indifference claim. Plaintiff's claims are properly analyzed in the medical context, and because the standards are the same, his conditions of confinement claim is duplicative.

### 3.    Negligence

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law

claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.1997).

        a.    *Medical Negligence*

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Avivi v. Centro Medico Urgente Medical Center, 159 Cal.App.4th 463, 468, n.2, 71 Cal.Rptr.3d 707, 711 (Cal. Ct. App. 2008) (internal quotations and citation omitted).

        i.    Allegations Relating to Wheelchair Order

Plaintiff alleges that Defendants Clark, Holt, Ceballo, Barbolla and Anderson were negligent in failing to provide a walker and/or wheelchair, and/or failing to ensure that Plaintiff had the proper documentation for the use of a walker or wheelchair.

In the screening order, the Court found that Plaintiff stated a negligence claim against Defendants Holt and Barbolla based on their duty arising from their positions as treating sources in the prison where the wheelchair would have been provided. In his amended complaint, Plaintiff has alleged facts to show that Defendants Clark, Ceballo and Anderson were also in treating source positions and therefore owed Plaintiff a legal duty arising from that relationship. Plaintiff therefore states a negligence claim against Defendants Clark, Holt, Ceballo, Barbolla and Anderson.

        ii.    Allegations Relating to Bandage Changing

Plaintiff alleges that Defendants Clark, Holt, Ceballo, Anderson, Ross, Arabadia and Doe LVNs were negligent in failing to order daily bandage changes and/or refusing to change bandages.

In the prior screening order, the Court found that Plaintiff stated a negligence claim against Defendants Clark, Anderson and Ceballo based on their failure to order daily bandage changes in light of their position as treating sources with control over such orders. The Court also determined that Plaintiff stated a negligence claim against Defendant Ross and Doe LVNs based on their refusal, as Plaintiff's treating sources in the prison, to change his bandages. Finally, the Court found that Plaintiff stated a negligence claim against Defendant Holt for what Plaintiff alleges to be improper wound care.

Plaintiff has added allegations against Defendant Arabadia to demonstrate her position as a treating source.

Accordingly, Plaintiff states a negligence claim against Defendants Clark, Holt, Ceballo, Anderson, Ross, Arabadia and Doe LVNs based on their failure to order daily bandage changes and/or refusal to change bandages.

        ii.  Failure to Send Plaintiff to Prison Hospital

Plaintiff alleges that Defendants Holt, Ceballo, Anderson, Arabadia and Doe LVS were negligent in failing to send him to the prison hospital to be seen for his infection.

In the screening order, the Court found that Plaintiff stated a claim against Defendants Ceballo, Anderson and Doe LVNs based on their failure to send Plaintiff to the prison hospital. Plaintiff now asserts additional allegations against Defendant Arabadia to state a negligence claim against her, as well.

However, Plaintiff failed to correct the deficiency against Defendant Holt. He again failed to make any allegations that Defendant Holt refused to send him to the prison hospital. In fact, when Plaintiff saw Defendant Holt on February 2, 2011, she had a doctor look at his wound and he was then taken to the prison hospital for treatment.

Accordingly, Plaintiff states a negligence claim against Defendants Ceballo, Anderson, Arabadia and Doe LVNs based on their refusal to send Plaintiff for further treatment.

iii.     Defendant Alade

Plaintiff contends that Defendant Alade was negligent in failing to prescribe antibiotics despite his knowledge of Plaintiff's past infection and his statement that he would do so. This states a negligence claim against Defendant Alade.

iv.     Defendant Thiel

Finally, Plaintiff contends that Defendant Thiel was negligent in failing to authorize the recommended knee manipulation without examining Plaintiff. In the prior screening order, the Court explained that Plaintiff's allegations were too vague to state a claim. He has not provided further facts to support a finding that Dr. Thiel, as a non-treating source, was negligent in his decision. Accordingly, he fails to state a claim against him.

    b.     *Non-Medical Negligence*

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994 (2008) (internal quotations omitted)).

Plaintiff contends that Defendants Rios, Torres and Doe correctional officers were negligent in their failure to provide Plaintiff with a wheelchair to use during escorts. He alleges that, as custody staff, they are able to secure a wheelchair when necessary. This is sufficient to state a negligence claim against Defendants Rios, Torres and Doe correctional officers.

    4.     Americans with Disabilities Act/Rehabilitation Act

Title II of the ADA and section 504 of the RA prohibit discrimination on the basis of disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability;

(2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability," and "[t]o establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell, 303 F.3d at 1052.

Plaintiff alleges that Defendants Holt, Ceballo, Barbolla, Anderson, Rios, Torres and the two Doe correctional officers violated the ADA and RA by denying him the use of his wheelchair and walker.

Plaintiff's claims under the ADA and the RA are barred for the following reasons. First, individual liability is precluded under the ADA and the RA. A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007); Green v. City of New York, 465 F.3d 65, 78-9 (2d Cir. 2006); Garcia v. S.U.N.Y. Health Services Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001).

Second, Plaintiff was not denied the use of his wheelchair or walker *because* of his disability. Rather, his allegations demonstrate that he was most often denied because of issues with the order(s). The treatment, or lack of treatment, concerning Plaintiff's medical condition does not provide a basis upon which to impose liability under the RA or the ADA. Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010).

Plaintiff therefore fails to state a claim under the ADA or RA.

### D.     CONCLUSION AND ORDER

Plaintiff's FAC states the following cognizable claims: (1) violation of the Eighth Amendment against Defendants Holt, Barbolla, Ceballo, Anderson, Rios, Torres, Ross, Arabadia, two Doe correctional officers and Doe LVNs; (2) medical negligence against

Defendants Holt, Barbolla, Clark, Ceballo, Anderson, Ross, Arabadia, Alade and Doe LVNs; and (3) negligence against Defendants Rios, Torres, and two Doe correctional officers.

The FAC does not state any further claims against any other Defendants. Thus, Defendant Thiel shall be DISMISSED from this action.

IT IS SO ORDERED.

Dated:   **November 13, 2013**                   /s/ *Dennis L. Beck*
                                                    UNITED STATES MAGISTRATE JUDGE