UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR ATCHERLEY, | Case No.: 1:12cv00225 LJO DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | REGARDING DEFENDANT ALADE'S MOTION FOR SUMMARY JUDGMENT |
| CLARK, et al., | (Document 165) |
| Defendants. | THIRTY-DAY OBJECTION DEADLINE |

Plaintiff William Atcherley ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983. This action is proceeding on Plaintiff's Third Amended Complaint, filed on January 26, 2015, for violation of the Eighth Amendment and negligence against numerous Defendants.

On November 24, 2014, Defendant Alade filed the instant motion for summary judgment.[1] Plaintiff opposed the motion on December 24, 2014, and Defendant Alade filed his reply on January 7, 2014. Pursuant to Local Rule 230(l), the motion was deemed submitted when Defendant Alade filed his reply.

---

[1] Defendant's motion for summary judgment was filed prior to the filing of Plaintiff's Third Amended Complaint, which did not alter any allegations against him. Motions for summary judgment of numerous other Defendants are pending.

1

On January 7, 2015, Plaintiff filed an unauthorized surreply.[2]

## I.  LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most

---

[2] Defendant Alade did not move to strike the surreply.

favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS[3]**

Plaintiff is currently incarcerated at Kern Valley State Prison.

In 2010, Plaintiff was referred to an Orthopedic Specialist/Surgeon for treatment after an MRI of his left knee revealed a meniscal tear.

Defendant Alade examined Plaintiff on July 30, 2010, and recommended arthroscopic knee surgery.

On January 18, 2011, immediately prior to the surgery, Defendant Alade examined Plaintiff.  Plaintiff informed him of a "previous infection."  ECF No. 207, at 11.  Defendant Alade "said that he would order some antibiotics for plaintiff to take after surgery."  ECF No. 207, at 11.

On January 18, 2011, Defendant Alade performed arthroscopic surgery on Plaintiff's left knee.  He ordered the use of a wheelchair and ordered that the dressing be kept clean and dry until the next appointment.  However, Defendant Alade "forgot" to order the antibiotics despite his knowledge of Plaintiff's previous infection.  ECF No. 207, at 11.

From the time when Plaintiff returned to the prison to February 11, 2011, Plaintiff alleges that numerous Defendants failed to provide proper care for his wound.  Beginning on February 4, 2011, Plaintiff was treated with IV antibiotics and diagnosed with "Methiciliian-Sensitive Straphylococcus Aureas ("MSSA"), septic arthritis and mild anemia.  ECF No. 207, at 27.

On February 11, 2011, Defendant Alade performed a second painful surgery to clean the infection out of Plaintiff's left knee due to "poor wound care."  ECF No. 207, at 27.

---

[3] Only the allegations relating to Defendant Alade will be summarized.

3

Because of issues with recovery, mobility and pain, Plaintiff was referred to Defendant Alade in March, April and June 2011.  On March 30, 2011, Defendant Alade recommended a knee manipulation.  The recommendation was ultimately denied by Plaintiff's primary care physician.

### III.     UNDIPSUTED MATERIAL FACTS[4]

Plaintiff was seen by Defendant Alade[5] for the first time on July 30, 2010, following complaints of pain in his left knee.  As a result of the examination during this visit, Defendant Alade recommended that Plaintiff undergo left knee arthroscopic surgery.  ECF No. 207, at 10 (Pl.'s Third Amended Complaint); Wagner[6] Decl. ¶ 5(a), Ex. B at 004-007.

Plaintiff next saw Defendant Alade on January 18, 2011, at San Joaquin Community Hospital.  ECF No. 207, at 11; Wagner Decl. ¶ 5(b), Ex. B at 008-012.  Plaintiff met with Defendant Alade just prior to his surgery.  ECF No. 207, at 11; Wagner Decl. Ex B. at 008-009; Lucas Decl. Ex. F (Pl.'s Dep.) at 19:5-19,.

Defendant Alade performed a number of left knee procedures in an arthroscopic fashion on January 18, 2011, at San Joaquin Community Hospital.  Wagner Decl. ¶ 5(b), Ex. B at 010-012.

Following the surgery, Defendant issued post-operative orders while Plaintiff was still at San Joaquin Community Hospital, including an order that the dressing be kept clean and dry.  ECF No. 207, at 11; Wagner Decl. ¶ 5(b), Ex. B at 023.

---

[4] The parties submitted a Joint State of Undisputed Facts on November 25, 2014.  Although Plaintiff admits the truth of factual events before and after January 18, 2011, he contends that they are not relevant to his negligence claim against Defendant Alade, which arises from his January 18, 2011, visit.  However, while they may not be specifically relevant to the events of January 18, 2011, the facts reveal the background and context of Defendant Alade's treatment.  Plaintiff's relevancy objection is overruled.

[5] Defendant Alade has worked for the Pacific Orthopedic Medical Group since 2007.  There is no dispute that Defendant Alade provided services for CDCR prisoners and was therefore acting under color of state law at the time of the events at issue.

[6] Kendall S. Wagner, M.D., is an expert retained on behalf of Defendant Alade.  There is no dispute as to his expert qualifications.  Wagner Decl. ¶¶ 1-3.  Plaintiff, however, suggests that opinions as to the "standard of care of a physician in the field of Orthoscopic surgery" and "causation issues concerning Orthopedic matters" are within the knowledge of lay persons.  He is incorrect, as will be discussed below.

4

On February 11, 2011, Plaintiff returned to Defendant Alade and underwent a second surgery on his left knee. ECF No. 207, at 27; Wagner Decl. ¶ 5(d), Ex. B at 013-017. The operative report indicates that Plaintiff had poor wound care and developed a subsequent infection. He was diagnosed with a septic left knee status post arthroscopic surgery. ECF No. 207, at 27; Wagner Decl. ¶ 5(d), Ex. B at 016-017.

Plaintiff saw Defendant Alade on March 24, 2011, by way of telemedicine. Defendant Alade asked that Plaintiff be seen in his office. Wagner Decl. ¶ 5(e), Ex. B at 019.

Plaintiff returned to Defendant Alade on April 22, 2011. The lab studies showed no evidence of infection. Defendant Alade performed an arthrocentesis on Plaintiff's left knee and recommended another knee manipulation. Wagner Decl. ¶ 5(f), Ex. B. 020-021. This visit was the last time Plaintiff saw Defendant Alade. Wagner Decl. ¶ 5(g).

Plaintiff's claim relates only to the January 18, 2011, visit.

## IV.   DISCUSSION

### A.   Legal Standard- Negligence

Under California law, the elements of a claim for professional negligence, also referred to as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Johnson v. Superior Court, 143 Cal.App.4th 297, 305 (2006).

### B.   Applicable Standard of Care

The general rule applicable in negligence cases arising out of the rendering of professional services is that the applicable standard of care is a matter "peculiarly within the knowledge of experts . . ." Flowers v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal.4th 992, 1001 (1994); see also Johnson, 143 Cal.App.4th at 305. Therefore, in order to prevail, a plaintiff must offer an expert's opinion to prove a duty owed, breach of that duty, or to show that the defendant's alleged negligence

was the proximate cause of the plaintiff's alleged injury.  See Bushling v. Fremont Med. Ctr., 117 Cal.App.4th 493, 510, 11 Cal.Rptr.3d 653 (2004); Jennings v. Palomar Pomerado Health Systems, Inc., 114 Cal.App. 4th 1108, 1118 (2003); see also Johnson v. United States, 2012 WL 1094322, *12 (N.D.Cal. 2012) (granting summary judgment to defendant on malpractice claim because plaintiff failed to provide expert testimony or evidence to establish that defendant's alleged breach of applicable standard of care caused his injuries).

Plaintiff argues, however, that expert testimony is not required where the jury is capable of deciding what constitutes reasonable conduct, or what caused the injuries, without the opinion of an expert.  Plaintiff is correct that an exception exists, but the exception is narrow.  Expert testimony is not required if "the conduct required by the particular circumstances is within the common knowledge of the layman." Flowers, 8 Cal.4th at 1001.  The "common knowledge" exception is "principally limited to situations in which the plaintiff can invoke the doctrine of res ispa loquitor, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.'"  Id. (internal citations omitted).

The issue in this case, however, is squarely outside of the common knowledge of the layperson.  Plaintiff's theory of negligence is based on his contention that Defendant Alade should have ordered antibiotics on January 18, 2011, the date of Plaintiff's first surgery.  Whether or not antibiotics are warranted under specific circumstances, and the resulting impact of such a decision, is purely a medical issue for which expert testimony is necessary.

The Court therefore rejects Plaintiff's contention that expert testimony is not required to prove his claim.

C.   Analysis

Defendant Alade presents the expert testimony of Dr. Wagner, a board-certified physician in Orthopedic Surgery.  Wagner Decl. ¶ 1.  Dr. Wagner reviewed the medical records at issue, and based

on this review, as well as his own education and expertise, opines that Defendant Alade did not violate the standard of care on January 18, 2011. Wagner Decl. ¶ 6(d).

According to Dr. Wagner, the standard of care only requires the prescription of antibiotics following an operative procedure when there is some objective indicator that an infectious process is ongoing or suspected.[7] Wagner Decl. ¶ 6(d). In this case, it is undisputed that Defendant Alade's operative notes from the January 18, 2011, procedure do not reference any signs of an ongoing infectious process at Plaintiff's surgical site. Wagner Decl. ¶6(d). Defendant Alade has therefore met his burden of showing the absence of facts to support Plaintiff's position.

The burden now shifts to Plaintiff to designate specific facts demonstrating the existence of genuine issues for trial. In his opposition, Plaintiff argues that on December 24, 2010, he was diagnosed with, and treated for, an infection. He was treated with antibiotics and got better after a few weeks. However, Plaintiff states that he does not know if he was completely over the infection when he saw Defendant Alade on January 18, 2011. Pl.'s Decl. ¶ 19. When he met with Defendant Alade on January 18, 2011, he informed him of the December 24, 2011, infection because he did not know if the infection was relevant, and because he was concerned with going ahead with the surgery. Pl.'s Decl. ¶ 20. Plaintiff contends that Defendant Alade told him not to worry, and that he would be ordering antibiotics after the surgery. Pl.'s Decl. ¶ 20.

Prior to continuing with the analysis, the Court must address Plaintiff's theory of lack of informed consent. Throughout his opposition and in his declaration, Plaintiff suggests that he "was feeling really scared about going forward with the surgery because of the infection," and that he only agreed to go forward based on Defendant Alade's assurance that he would be given antibiotics. Pl.'s Decl. ¶ 21. He states that if Defendant Alade had not promised him the antibiotics, he would have refused surgery until he was sure that he was over the infection. Pl.'s Decl. ¶ 21.

---

[7] One of the reasons behind this standard of care, according to Dr. Wagner, is the increased occurrence of antibiotic-resistant pathogens. Most practitioners are therefore unwilling to order antibiotics on a prophylactic basis because the risks of doing so are outweighed by the minimal potential benefits. Wagner Decl. ¶ 6(e).

7

Based on these allegations, Plaintiff argues, for the first time, that Defendant Alade violated the doctrine of informed consent. Plaintiff is not permitted, however, to raise an issue for the first time in an opposition to a motion for summary judgment. See eg. Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011); Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008). Plaintiff presented no theories of liability in any of his complaints that relied on the doctrine of informed consent.

In his unauthorized surreply, Plaintiff argues that he is not "skilled in the art of words," and that his negligence claim necessarily included the informed consent issue. ECF No. 203, at 2. However, a violation of the doctrine of informed consent, while falling within the negligence umbrella, is a different legal theory and requires different elements of proof. Moreover, despite Plaintiff's suggestion, there are no facts in his Third Amended Complaint, or any complaint for that matter, that indicated that he had reservations about proceeding with his surgery because of a prior infection. In fact, the Third Amended Complaint does not even mention a December 2010 infection. Thus, even considering Plaintiff's pro se status, he has not alleged any facts to support an informed consent issue.[8] Accordingly, Plaintiff's arguments regarding informed consent are not properly before this Court and will not be addressed further.

Returning to Plaintiff's allegations, Defendant Alade does not address Plaintiff's testimony that he informed him of a prior infection. However, even viewing this evidence in the light most favorable to Plaintiff, the standard of care does not revolve solely around what a patient tells a doctor. Rather, as noted above, the standard of care considers whether there is some *objective* indicator that an infectious process is *ongoing or suspected*. Wagner Decl. ¶ 6(d). Plaintiff's testimony only supports a finding that he had an infection on December 24, 2010, and that he told Defendant Alade of the "recent and possible on-going infection" on January 18, 2011. Pl.'s Decl. ¶ 20. It does not support a finding that there was some *objective* indication of an ongoing or suspected infection. That finding would be made

---

[8] Defendant Alade points out that during Plaintiff's deposition, he confirmed that the sole basis for his claim against Defendant Alade was based on the alleged failure to prescribe antibiotics. ECF No. 198-1 (Pl.'s Dep.), at 6.

through an examination, and it is undisputed that Defendant Alade did not note any signs of infection in his operative notes.

Indeed, during his deposition, Plaintiff testified that he thought that the December 2010 infection was a urinary tract infection, and that <u>he did not recall having any symptoms</u> as of January 18, 2011. Lucas Decl., Ex. F (Pl.'s Decl.) at 3-4. He also stated that it was possible that he discussed the specifics of his infection with Defendant Alade, but he didn't remember doing so, as he was just trying "to apprise him of the situation that I had had an infection. . ." Lucas Decl., Ex. F, at 4. Therefore, even if Plaintiff told him of the prior infection and Defendant Alade "forgot" to order antibiotics, he did not violate the standard of care. There is simply no evidence that Plaintiff had objective signs of an ongoing or suspected infection.

To the extent that Plaintiff suggests a different standard of care, he has not presented any expert testimony to support his contention that his verbal statement, without more, required the prescription of antibiotics. Plaintiff argues that he can rely on Defendants, or Defendants' agents, for the applicable standard of care. He points to the consultation notes of Dr. Amirpour, who saw Plaintiff on September 29, 2014. In the recommendation, Dr. Amirpour notes that a total knee replacement is necessary, "although the risk of infection is high especially in this patient." However, Dr. Amirpour's statement, made more than three years after the time at issue, was based on Plaintiff's prior history of septic arthritis, and had nothing to do with his December 2010 infection. Pl.'s Decl., Ex. 15.

Plaintiff also argues that he is entitled to an inference that Defendant Alade should have ordered antibiotics based on Defendant Clark's subsequent antibiotic prescription after Plaintiff returned to the prison. However, Defendant Clark's actions do not alter the standard of care set forth by Dr. Wagner.

Finally, Defendant Alade argues that his alleged failure to order antibiotics did not play a substantial factor in Plaintiff's postoperative complications. Dr. Wagner opines that there is nothing in the medical records suggesting that Defendant Alade's actions played a causal role in the subsequent

infection.  Wagner Decl. ¶ 6(i).  Plaintiff's failure to proffer expert evidence as to causation renders this fact undisputed.

Accordingly, the Court finds that Plaintiff has failed to carry his burden of demonstrating the existence of genuine issues of disputed fact.

## V.     FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant Alade's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 20, 2015**                     /s/ Dennis L. Beck
                                                UNITED STATES MAGISTRATE JUDGE