UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR ATCHERLEY,<br><br>    Plaintiff,<br><br>  v.<br><br>CLARK, et al.,<br><br>    Defendants. | Case No.: 1:12cv00225 LJO DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT ANDERSON'S MOTION FOR SUMMARY JUDGMENT<br>(Document 166)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff William Atcherley ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983. This action is proceeding on Plaintiff's Third Amended Complaint, filed on January 26, 2015, for violation of the Eighth Amendment and negligence against numerous Defendants.

On November 26, 2014, Defendant Anderson filed the instant motion for summary judgment.[1] After a stay was imposed and subsequently lifted, Plaintiff opposed the motion on March 23, 2015.

---

[1] Defendant's motion for summary judgment was filed prior to the filing of Plaintiff's Third Amended Complaint, which did not alter any allegations against her. The Court granted summary judgment in favor of Defendant Alade on April 24, 2015. The motion for summary judgment filed by Defendants Arbadia, Borbolla, Celballo, Clark, Holt, Rios, Ross and Torres on November 26, 2014, is pending. Additional Defendants have answered, though the Court has not opened discovery for these Defendants. The newly-answering Defendants have a dispositive motion deadline of September 16, 2015.

1

Defendant Anderson filed her reply on April 13, 2015.  Pursuant to Local Rule 230(l), the motion is deemed submitted.[2]

## I. LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the

---

[2] Defendant admits that she did not provide the notice required by Rand v. Rowland, 152 F.3d 952, 961-963 (9th Cir. 1998), when she filed her motion. Although Plaintiff argues in his opposition that this is grounds for denial of the motion, the Court finds that the error is harmless. Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1159-60 (9th Cir.2013). Plaintiff was obviously aware of Rand, and therefore the requirements for opposing summary judgment, because he raised it in his opposition. Indeed, Plaintiff provided the Court with an opposition, his own declaration, a response to Defendant's statement of undisputed facts, his own statement of undisputed facts and his own statement of disputed facts. The Court also notes that Plaintiff received the Rand warning when the remaining Defendants filed their motion for summary judgment the day before Defendant Anderson.  Any argument that Plaintiff did not know what was necessary to defeat summary judgment is simply disingenuous.

2

mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS[3]

Plaintiff is currently incarcerated at Kern Valley State Prison. The events at issue occurred while Plaintiff was incarcerated at Corcoran State Prison ("CSP") in Corcoran, California.

On January 18, 2011, Defendant Alade performed arthroscopic surgery on Plaintiff's left knee. He ordered the use of a wheelchair and ordered that the dressing be kept clean and dry until the next appointment.

When Plaintiff returned to CSP on January 18, 2011, Defendant Clark examined him and ordered a wheelchair for Plaintiff to use for two weeks. He also wrote and approved an accommodation Chrono for the use of the wheelchair. Plaintiff did not receive the wheelchair, however.

Also on January 18, 2011, Defendant Kim wrote an order for Plaintiff's dressing to be kept clean and dry.

---

[3] Only the allegations relating to Defendant Anderson will be summarized.

3

Plaintiff alleges that copies of the orders for a wheelchair and dressing changes were faxed to his housing unit, and that such orders are to be reviewed by all nurses at the 4A Clinic, including Defendant Anderson.

Beginning on January 20, 2011, Plaintiff alleges that he asked numerous nurses to follow-up on the wheelchair order and to change his bandages. The nurses generally told him that there was no order for a dressing change and denied his requests.

On January 28, 2011, Plaintiff was taken to the 4A Clinic, where he was seen by Defendant Anderson. He was forced to walk to the appointment because the housing unit wheelchair could not be located. Defendant Anderson changed Plaintiff's bandage and informed him that his drainage was not normal. Plaintiff told Defendant Anderson that he was supposed to have a wheelchair, and that he had received a copy of the Chrono but that the housing unit wheelchair could not be located. Plaintiff asked Defendant Anderson to issue him a wheelchair and send him to the prison hospital doctor. Plaintiff contends that she was authorized to do both, but refused to do either. Defendant Anderson told Plaintiff that he was seeing the doctor in three days, and she refused to order more bandage changes.

Plaintiff alleges that Defendant Anderson failed to order more frequent bandage changes, or order that Plaintiff be taken to the prison hospital to see a doctor for his infection/drainage despite a January 27, 2011, referral to the RN line and doctors' orders to keep the dressing dry. ECF No. 207, at 23.

Plaintiff contends that when he saw Defendant Anderson, she had Plaintiff's chart, which included the orders for bandage changes and the wheelchair.

Between January 28, 2011, and February 11, 2011, Plaintiff alleges that numerous Defendants failed to provide proper care for his wound. Beginning on February 4, 2011, Plaintiff was treated with IV antibiotics and diagnosed with "Methiciliian-Sensitive Straphylococcus Aureas ("MSSA"), septic arthritis and mild anemia. ECF No. 207, at 27. He underwent surgery on February 11, 2011, to clean the infection out of Plaintiff's left knee due to "poor wound care." ECF No. 207, at 27.

### III. UNDIPSUTED MATERIAL FACTS

On January 18, 2011, Dr. Alade performed arthroscopic surgery on Plaintiff's left knee. ECF No. 207, at 101. Plaintiff had an order to keep the dressing clean and dry, written on January 18, 2011. Anderson Decl. ¶ 10; ECF No. 207, at 99. Also on January 18, 2011, Defendant Clark issued a Chrono indicating that Plaintiff needed a wheelchair through February 1, 2011.[4] ECF No. 207, at 102.

Plaintiff saw Defendant Anderson,[5] a Registered Nurse, at the 4A Clinic of CSP on January 28, 2011. Anderson Decl. ¶¶ 6-7. This was the only time that Plaintiff saw Defendant Anderson. Anderson Decl. ¶ 16.

Prior to seeing Defendant Anderson, Plaintiff completed a portion of a Health Care Request Form. Anderson Decl. ¶ 7; ECF No. 207, at 109. In the Health Care Request Form, Plaintiff stated that he had surgery on his left knee on January 18, 2011, and that he fell down during his escort on January 26, 2011. He stated that his knee was "bleeding at one spot and clear/fluids are coming out. . . need F/U with PCP/RN."[6] ECF No. 207, at 109.

During Plaintiff's visit with Defendant Anderson, Plaintiff told her that he was having a fever and chills, and that he was supposed to have a wheelchair Chrono right after surgery, but he only received the Chrono last night. Plaintiff also rated his pain at a six.[7] Anderson Decl. ¶8, ECF No. 207, at 109.

---

[4] Plaintiff admits the statement, but adds that the LVNs were denying the existence of the bandage change order, and that Defendant Anderson had responsibility over LVNs to which she could have given directions. Plaintiff's added facts are not material to the truth of the statement.

[5] Beginning in 2010, Defendant Anderson worked for a company that contracted with California State Prisons in Corcoran and Salinas. Anderson Decl. ¶ 3. There is no dispute that Defendant Anderson was acting under color of state law for purposes of section 1983.

[6] Plaintiff admits the truth of this statement, but adds that the form was completed two days prior to his appointment with Defendant Anderson, and that by January 28, 2011, the fluid had changed to "clear-yellow." ECF No. 224, at 4. For support, he cites a January 27, 2011, progress note indicating that the fluid on the bandage was "clear-yellow in color." The progress note from the day before does not necessarily indicate what color the fluid was on January 28, 2011. More importantly, neither the progress note nor Plaintiff's inference alters his statement on the Health Care Request Form.

[7] Plaintiff again admits the truth of the statement, but contends that he also told her that he had decreased range of motion and that the LVNs were not changing his bandage when it was wet and dirty. Pl.s' Decl. ¶ 23. Again, these added facts do not render the original fact disputed.

Based on Plaintiff's complaints, Defendant Anderson was assessing Plaintiff to determine whether he had an infection.  Anderson Decl. ¶ 8.  She took Plaintiff's heart rate, respiration, temperature and oxygen saturation, all of which were normal.[8]  Anderson Decl. ¶ 9, ECF No. 207, at 109.  Defendant Anderson also assessed Plaintiff's left knee dressing and noted one spot of blood and a moderate amount of clear, serous drainage.[9]  Anderson Decl. ¶ 10.  Defendant Anderson changed the dressing on Plaintiff's left knee.  Anderson Decl. ¶ 10, ECF No. 207, at 109.  Plaintiff has no criticism of this dressing change on the left knee.  Pl.'s Dep. 213:18-24.

After Plaintiff was seen by Defendant Anderson, Plaintiff walked back to his cell.  Anderson Decl. ¶ 15; Pl.'s Dep. 205:10-25.

On February 11 2011, Dr. Alade performed a second surgery to treat a staph aureus infection in his left knee.  ECF No. 207, at 150-151.

## IV.    DISCUSSION[10]

### A.    Summary of Parties' Arguments

Defendant first argues that as to Plaintiff's Eighth Amendment claim that she (1) did not provide Plaintiff a wheelchair; (2) did not refer him to a physician immediately after her assessment; and (3) did not order other nurses to change his bandage more often, Plaintiff did not have an objectively serious medical condition.  Even if he did have a serious medical condition, Defendant was

---

[8] Plaintiff attempts to dispute this by arguing that these vital signs do not rule out an infection or sepsis.  Plaintiff's interpretation of the vital signs is not within his knowledge as a lay person.  In any event, it does not render his actual vital signs disputed.

[9] Plaintiff states that he cannot admit or deny this fact because Plaintiff does not know what she did or did not see.  This does not render the fact disputed.

[10] To the extent that Plaintiff argues that Defendant's motion should be denied because she referenced the First Amended Complaint rather than the October 14, 2014, Second Amended Complaint, his argument is rejected because the error has no bearing on the merits of this motion.  As to Defendant Anderson, all three complaints, including the operative Third Amended Complaint, allege the same factual allegations against her.  The Court also notes that Defendant's contention that the First Amended Complaint is the operative pleading against her is incorrect.  An amended complaint supersedes the preceding complaints.  Lacey v. Maricopa County, 693 F.3d 896, 907 (9th Cir. 2012) (en banc); Local Rule 220.

not deliberately indifferent because she provided appropriate care and did not have the authority issue a wheelchair or order more frequent bandage changes.

As to Plaintiff's negligence claim, Defendant argues that she has provided competent expert testimony from Dr. Anwar to establish that (1) she complied with the applicable standard of care; and (2) her actions or inactions did not proximately cause Plaintiff's alleged injuries.

In opposing the motion, Plaintiff argues that he had a serious medical need when he saw Defendant Anderson on January 28, 2011, and that she was deliberately indifferent when she could have, but did not, issue a wheelchair, send him to the doctor or order more frequent bandage changes. Regarding his negligence, claim, Plaintiff argues first that an expert is not necessary in this action because it is about the way employees implemented prison policies and procedures, rather than medical care standards. He contends that her various alleged failures were negligent and caused harm.

B.    Eighth Amendment

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be

shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

As Plaintiff points out, his allegations do not involve Defendant Anderson's bandage change, which he describes as "excellent." Pl.'s Dep. 213:21-21. Rather, Plaintiff's claims are based on what he contends that she *should have* done- issued him a wheelchair, sent him immediately to see a prison doctor, and ordered more frequent bandage changes.

### 1. *Objective Element – Existence of Serious Medical Need*

Defendant first argues that Plaintiff did not have an objectively serious medical condition on January 28, 2011. Defendant believes that despite Plaintiff's subjective complaint of fever and chills, her examination did not reveal an infection, and therefore he could not have had a serious medical need.

The Court rejects this argument. It is undisputed that Plaintiff underwent arthroscopic knee surgery ten days prior to his visit with Defendant Anderson. He had a wound that required care, and he presented to Defendant Anderson after a fall caused the wound to bleed and drain. Plaintiff also complained of a fever, chills and pain. While Defendant Anderson may believe that her examination did not reveal an infection, this is not determinative of whether Plaintiff had a serious medical need in the first instance.

The Court declines to find that, as a matter of law, an open wound requiring care after surgery and subjective complaints of fever, chills and pain do not rise to the level of a serious medical need.

### 2. *Subjective Element- Deliberate Indifference*

Plaintiff first alleges that Defendant Anderson was deliberately indifferent for failing to send him to the prison hospital so that he could see a doctor. The undisputed facts show that Defendant Anderson read Plaintiff's Health Care Request Form prior to seeing him, listened to his subjective complaints, took his vital signs, examined his wound and then cleaned and re-dressed the incision. It

is also undisputed that Plaintiff's vital signs were normal and that Defendant Anderson referred Plaintiff to prison doctor for a January 31, 2011, appointment.

However, the parties dispute the state of Plaintiff's wound. Defendant Anderson contends that she found no signs or symptoms of infection, such as redness of the wound, hot areas around the wound, pus or foul smelling drainage. Anderson Decl. ¶ 11; ECF No. 207, at 109. Plaintiff states that the wound was red and swollen, with heavy and foul smelling drainage.[11] Pl.'s Decl. ¶ 23.

Even if Plaintiff's wounds had these characteristics, the undisputed evidence negates a finding that Defendant Anderson acted with deliberate indifference. Defendant Anderson listened to Plaintiff's complaints, examined his wound, took his vital signs (which she found to be normal) and then cleansed and re-dressed Plaintiff's wound. Defendant Anderson also knew that Plaintiff would be seeing the prison doctor in three days. This is not a case where Defendant Anderson denied, or even delayed treatment. Rather, she provided treatment and made a decision not to send Plaintiff to the prison hospital. Even assuming Defendant Anderson erred by not sending Plaintiff immediately to the prison hospital, an Eighth Amendment claim may not be premised on even gross negligence. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Next, Plaintiff argues that Defendant Anderson was deliberately indifferent for failing to provide Plaintiff with a wheelchair pursuant to his Chrono. There is no dispute that Plaintiff had a valid Chrono for a wheelchair dated January 18, 2011, and there appears to be no dispute that he had not received the wheelchair prior to his visit with Defendant Anderson. According to Plaintiff, he told Defendant Anderson that he had not yet received the wheelchair and requested that she issue one. Pl.'s Decl. ¶ 23. Defendant Anderson suggests in her declaration that she does not remember whether Plaintiff showed her the Chrono, but even if he had, she could not have provided one to Plaintiff.

---

[11] The Court notes that Plaintiff declares that his wound had these characteristics for the first time in his opposition, after Defendant Anderson laid out the signs of an infection in her declaration.

9

Anderson Decl. ¶¶ 12-13. According to Defendant Anderson, based on her training, she believed that a wheelchair Chrono had to be processed and approved through the ADA Office, and that a wheelchair would have been provided by either the ADA Nurse, the Plata LVN or the Triage and Treatment Area Nurse. She contends that she was not authorized to issue the wheelchair without prior processing and approval by the ADA Nurse's Office. Anderson Decl. ¶ 13.

Plaintiff disputes this, and argues that anyone in nursing could have provided a wheelchair where the inmate had a valid Chrono. To support his argument, he cites discovery responses by Defendants Borbolla and Holt, in which they suggested that nurses can give supplies to an inmate with a valid Chrono. Pl.'s Decl., Ex. 6[12] and 9.

Plaintiff's evidence, however, shows only that *other* Defendants thought they could issue a wheelchair. It does not establish that Defendant Anderson believed that she could issue a wheelchair. Therefore, even if Defendant Anderson had the authority to issue a wheelchair but she mistakenly thought she could not have provided a wheelchair to Plaintiff, a mistaken belief is not sufficient to demonstrate deliberate indifference. The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Finally, Plaintiff argues that Defendant Anderson should have ordered LVNs to change his bandages more often. There is no dispute that Dr. Alade ordered that Plaintiff's dressing be kept clean and dry. For purposes of this motion, and viewing the evidence in the light most favorable to Plaintiff, Plaintiff asked numerous medical staff to change his bandages on many occasions, but it was changed only once prior to his January 28, 2011, appointment. Plaintiff also agrees that Defendant Anderson was not authorized to "modify the order relating to dressing changes made on January 18, 2011." ECF No. 234-2. Indeed, keeping a bandage clean and dry and not necessarily the same as ordering specific

---

[12] Defendant argues that this response does not refer to the "processing/authorization of a wheelchair Chrono, but rather issuance of a [sic] generic devices and refers to the ADA Nurse being involved." ECF No. 234-2, at 5-6. However, the question specifically refers to a "valid doctor ordered wheelchair order or Chrono," which is exactly what Plaintiff contends that he had in his possession. Pl.'s Decl., Ex. 6.

10

bandage changes. Therefore, there is no dispute that Defendant Anderson could not order staff to change Plaintiff's bandages more often than what was indicated in the January 18, 2011, order.

Plaintiff attempts to avoid this by arguing that he wasn't asking her to modify the order, "but to direct her LVNs to adhere to it and to change plaintiff's bandage when it was wet or dirty." ECF No. 234-1. This is markedly different, however, than the statement in his Third Amended Complaint. There, he states that he requested Defendant Anderson to order "more frequent bandage changes" and/or "schedule daily bandage changes" ECF 207, at 22, 30. Plaintiff cannot now contend that he just wanted her to ensure that the LVNs followed the order. See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

Therefore, based on the above, the Court recommends that Defendant Anderson's motion for summary judgment on the Eighth Amendment claim be granted.

C.  Negligence

Under California law, the elements of a claim for professional negligence, also referred to as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Johnson v. Superior Court, 143 Cal.App.4th 297, 305 (2006).

The general rule applicable in negligence cases arising out of the rendering of professional services is that the applicable standard of care is a matter "peculiarly within the knowledge of experts . . ." Flowers v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal.4th 992, 1001 (1994); see also Johnson, 143 Cal.App.4th at 305. Therefore, in order to prevail, a plaintiff must offer an expert's opinion to prove a duty owed, breach of that duty, or to show that the defendant's alleged negligence was the proximate cause of the plaintiff's alleged injury. See Bushling v. Fremont Med. Ctr., 117 Cal.App.4th 493, 510, 11 Cal.Rptr.3d 653 (2004); Jennings v. Palomar Pomerado Health Systems, Inc., 114 Cal.App. 4th 1108, 1118 (2003); see also Johnson v. United States, 2012 WL 1094322, *12

(N.D.Cal. 2012) (granting summary judgment to defendant on malpractice claim because plaintiff failed to provide expert testimony or evidence to establish that defendant's alleged breach of applicable standard of care caused his injuries).

Plaintiff argues first that expert testimony is not required because neither the jury nor the Court would need assistance in deciding the issues. The Court disagrees. Expert testimony is not required if "the conduct required by the particular circumstances is within the common knowledge of the layman." Flowers, 8 Cal.4th at 1001. The "common knowledge" exception is "principally limited to situations in which the plaintiff can invoke the doctrine of res ispa loquitor, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.'" Id. (internal citations omitted).

Here, a layperson would not, as a matter of common knowledge, know whether Defendant Anderson should have sent Plaintiff immediately to the prison hospital, provided him with a wheelchair or ordered more bandage changes. These questions are purely medical issues for which expert testimony is necessary.

Defendant Anderson has presented the expert opinion of Dr. Anwar.[13] Dr. Anwar is Board Certified in Surgery and specializes in the provision of General Surgery. Anwar Decl. ¶ 1. Dr. Anwar reviewed Plaintiff's medical records and his deposition testimony, as well as Defendant Anderson's declaration. Anwar Decl. ¶ 8. Based on his training, education and experience, he opines that Defendant Anderson complied with the standard of care in all aspects of her treatment. Anwar Decl. ¶10. Dr. Anwar concludes that no act or omission of Defendant Anderson caused or contributed to, or was a substantial factor causing, Plaintiff's alleged injuries. Anwar Decl. ¶ 10.

Specifically, he opines that the standard of care for nurses does not require them to order other nurses to perform bandage changes. There was a valid medical order to keep Plaintiff's wound clean

---

[13] Plaintiff asks that the Court disregard Dr. Anwar's declaration for various reasons, including his belief that Dr. Anwar is biased because he has been sued by inmates in the past. However, his objections are not grounds to exclude his declaration.

and dry, and it was this order that served as the basis for Defendant Anderson to change Plaintiff's dressing.  Given that there was a valid medical order in place, Defendant Anderson could not order additional care, and had she done so, it would have been a violation of the standard of care.  Anwar Decl. ¶ 10(b).

As to Plaintiff's claim that Defendant Anderson should have given him a wheelchair, Dr. Anwar first notes that a health care provider is not necessarily authorized to give out an assistive device where the inmate shows a valid Chrono.  Dr. Anwar also opines that the standard of care does not require a Clinic Nurse to follow through with making sure a Chrono is properly processed by the ADA office.  Rather, there are specific inmate appeal procedures for such an issue.  Anwar Decl. ¶ 10(c).  Moreover, Dr. Anwar explains that as noted by Defendant Anderson and confirmed by Plaintiff in his deposition, Plaintiff was ambulatory when he left the visit.  While walking may cause more pain than using a wheelchair, the act of ambulating prevents the formation of scar tissue in the knee and encourages circulation.  Therefore, despite the Chrono, ambulation would have been appropriate for Plaintiff ten days after surgery.  Anwar Decl. ¶ 10(d).

Finally, Dr. Anwar explains that Defendant Anderson noted Plaintiff's subjective complaints of vomiting, fever and chills, which can all be potential signs of an infection.  However, Defendant Anderson also objectively assessed Plaintiff and found him to be afebrile, with a normal heart rate and normal respirations.  He explains that had Plaintiff been experiencing an infection, or actually experiencing the vomiting, fever and chills reported, to a reasonable medical probability, his temperature would have been elevated beyond 96.7 and he would have been experiencing pulse and respiration rates which were higher than his readings.  Dr. Anwar therefore concludes that the absence of a fever, itself, was sufficient for Defendant Anderson to believe that no infectious process was taking place and that he did not need to be seen immediately by a physician.  Anwar Decl. ¶10(e).

Dr. Anwar also opines that Defendant Anderson's own objective examination, where she found that Plaintiff's wound did not show signs of an infection, confirmed the absence of an infectious process.  Anwar Decl. ¶10(f).  Dr. Anwar further explained Defendant Anderson also knew, from

Plaintiff's own report on his Health Care Request Form, that he had clear fluids draining from his wound.  If Plaintiff had an infection, the drainage would not have appeared clear.  Anwar Decl. ¶ 10(g).

Based on Dr. Anwar's testimony, Defendant Anderson has met her burden of showing the absence of facts to support Plaintiff's position. The burden now shifts to Plaintiff to designate specific facts demonstrating the existence of genuine issues for trial.

Plaintiff cannot create a dispute of fact as to his claim that Defendant Anderson should have ordered more bandage changes.  It is undisputed that she did not have the authority to do so, and her lack of authority precludes the finding of a duty to do so.

As to Plaintiff's claim that Defendant Anderson should have sent him to the prison hospital immediately, Plaintiff contend that his wound did have signs of an infection, including redness, swelling and heavy and foul smelling discharge.  However, even assuming this is true, Dr. Anwar has testified that the absence of a fever, <u>alone</u>, would have been sufficient for Defendant Anderson to property conclude that an infection was not present.  Thus, her decision not to send Plaintiff immediately to the prison hospital was within the standard of care.  Plaintiff also suggests that the lack of a fever did not necessarily mean that he didn't have an infection, since he did not have a fever when he was ultimately diagnosed with an infection.  However, the Court does not judge whether Defendant Anderson followed the standard of care based upon what may have occurred in the future.  Rather, the Court is concerned with Defendant Anderson's treatment on January 28, 2011, and her decision making process given the facts she had at that time.

Finally, Plaintiff attempts to create a dispute as to his wheelchair claim by arguing that Defendant Anderson *did* have the authority to issue a wheelchair.  However, even if she did have the authority to so do, Dr. Anwar testified that her failure to do so did not violate the standard of care where Plaintiff was ambulatory when he left, and that it was not improper for him to be walking ten days after his surgery.

Defendant Anderson is therefore entitled to summary judgment on the negligence claim.

## V.    **FINDINGS AND RECOMMENDATIONS**

For the reasons set forth above, the Court HEREBY RECOMMENDS that summary judgment be GRANTED in favor of Defendant Anderson on all claims and that JUDGMENT be entered in her favor.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within fourteen (14) days from the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   **July 1, 2015**                    /s/ *Dennis L. Beck*
                                                                           UNITED STATES MAGISTRATE JUDGE